# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| GARDNER DENVER HOLDINGS, INC., PETER STAVROS, BRANDON BRAHM, ELIZABETH CENTONI, WILLIAM DONNELLY, JOHN HUMPHREY, MARC JONES, WILLIAM KASSLING, MICHAEL MARN, VICENTE REYNAL, NICKOLAS VANDE STEEG, JOSHUA WEISENBECK, INGERSOLL-RAND PLC, INGERSOLL-RAND U.S. HOLDCO, INC., and CHARM MERGER SUB INC., | ) CLASS ACTION ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. On April 30, 2019, Gardner Denver Holdings, Inc.'s ("Gardner Denver" or the "Company") Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Ingersoll-Rand plc ("Ingersoll-Rand"), Ingersoll-Rand U.S. HoldCo, Inc. ("HoldCo"), and Charm Merger Sub Inc. ("Merger Sub").

2. Pursuant to the terms of the Merger Agreement, defendants will combine Gardner Denver with the industrial segment of Ingersoll-Rand, and Gardner Denver will issue shares of

common stock such that Ingersoll-Rand's stockholders will own approximately 50.1% of the Company's common stock, while the Company's stockholders will own only approximately 49.9% (the "Proposed Transaction").

3.  On January 16, 2020, defendants filed a proxy statement/prospectus (the "Prospectus") with the United States Securities and Exchange Commission ("SEC"), which scheduled a stockholder vote on the Proposed Transaction for February 21, 2020.

4.  As set forth below, the Prospectus omits material information with respect to the Proposed Transaction, which renders the Prospectus false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.  This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Gardner Denver common stock.

9. Defendant Gardner Denver is a Delaware corporation and maintains its principal executive offices at 222 East Erie Street, Suite 500, Milwaukee, Wisconsin 53202. Gardner Denver's common stock is traded on the New York Stock Exchange under the ticker symbol "GDI."

10. Defendant Peter Stavros is Chairperson of the Board of the Company.

11. Defendant Brandon Brahm is a director of the Company.

12. Defendant Elizabeth Centoni is a director of the Company.

13. Defendant William Donnelly is a director of the Company.

14. Defendant John Humphrey is a director of the Company.

15. Defendant Marc Jones is a director of the Company.

16. Defendant William Kassling is a director of the Company.

17. Defendant Michael Marn is a director of the Company.

18. Defendant Vicente Reynal is Chief Executive Officer and a director of the Company.

19. Defendant Nickolas Vande Steeg is a director of the Company.

20. Defendant Joshua Weisenbeck is a director of the Company.

21. The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

22. Defendant Ingersoll-Rand is a Republic of Ireland public limited company and a party to the Merger Agreement.

23. Defendant HoldCo is a Delaware corporation, a wholly-owned subsidiary of Ingersoll-Rand, and a party to the Merger Agreement.

24. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Gardner Denver, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Gardner Denver (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

26. This action is properly maintainable as a class action.

27. The Class is so numerous that joinder of all members is impracticable. As of April 26, 2019, there were approximately 201,986,971 shares of Gardner Denver common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

28. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

29. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

30. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would

substantially impair or impede those non-party Class members' ability to protect their interests.

31. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of Gardner Denver and the Proposed Transaction*

32. Gardner Denver is a leading global provider of mission-critical flow control and compression equipment and associated aftermarket parts, consumables, and services, which the Company sells across multiple attractive end-markets within the industrial, energy, and medical industries.

33. On April 30, 2019, the Board caused Gardner Denver to enter into the Merger Agreement.

34. Pursuant to the terms of the Merger Agreement, defendants will combine Gardner Denver with the industrial segment of Ingersoll-Rand. Additionally, Gardner Denver will issue shares of common stock such that Ingersoll-Rand's stockholders will own approximately 50.1% of the Company's common stock, while the Company's stockholders will own only approximately 49.9%.

35. According to the press release announcing the Proposed Transaction:

Gardner Denver Holdings, Inc. (NYSE: GDI) and Ingersoll-Rand plc (NYSE: IR) today announced that they have entered into a definitive agreement pursuant to which Ingersoll Rand will separate its Industrial segment ("Ingersoll Rand Industrial") by way of a spin-off to Ingersoll Rand's shareholders and then combine it with Gardner Denver, creating a global leader in mission-critical flow creation and industrial technologies ("IndustrialCo"). The HVAC and transport refrigeration assets of the current Ingersoll Rand will become a pure play global leader in climate control solutions for buildings, homes and transportation ("ClimateCo").

IndustrialCo will be composed of the entirety of Gardner Denver and Ingersoll Rand Industrial, including, subject to closing, Ingersoll Rand's pending acquisition of Precision Flow Systems ("PFS"), which is expected to close by mid-2019. Gardner Denver's CEO, Vicente Reynal, and executives from both companies, will lead IndustrialCo. IndustrialCo is expected to be called Ingersoll Rand and trade under Ingersoll Rand's existing ticker (NYSE: IR). IndustrialCo will operate a diverse portfolio of iconic brands, including Gardner Denver. The Board of IndustrialCo will be led by Gardner Denver Chairman Peter Stavros. Michael W. Lamach, Ingersoll Rand's Chairman and CEO, along with the current Ingersoll Rand executive team, will continue to lead ClimateCo, which is expected to be renamed.

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of Ingersoll Rand and Gardner Denver, at the time of close, ClimateCo will receive $1.9 billion in cash from Ingersoll Rand Industrial that will be funded by newly-issued debt assumed by Gardner Denver in the merger. Upon close of the transaction, existing Ingersoll Rand shareholders will receive 50.1% of the shares of IndustrialCo on a fully diluted basis, valued at approximately $5.8 billion[4]. Existing Gardner Denver shareholders will retain 49.9% of the shares of IndustrialCo on a fully diluted basis. The transaction is expected to be tax-free to Ingersoll Rand and Gardner Denver's respective shareholders for U.S. federal income tax purposes. . . .

Governance

IndustrialCo's management team will be led by current Gardner Denver CEO, Vicente Reynal, and comprise executives from both companies.

IndustrialCo's Board of Directors will be led by Gardner Denver's Chairman, Peter Stavros, and consist of 10 directors, seven of which will be selected by Gardner Denver's Board of Directors and three of which will be selected by Ingersoll Rand's Board of Directors. Following the completion of the transaction, IndustrialCo's corporate operations will be located in Davidson, North Carolina.

The ClimateCo board will all remain and will continue to be led by Ingersoll Rand's Chairman and CEO, Mike Lamach.

Transaction Details

The transaction will be effected through a "Reverse Morris Trust" transaction pursuant to which Ingersoll Rand Industrial is expected to be spun-off to Ingersoll Rand's shareholders and simultaneously merged with and surviving as a wholly-owned subsidiary of Gardner Denver. The combination will result in existing Ingersoll Rand shareholders owning 50.1% of the combined company on a fully diluted basis, with existing stockholders of Gardner Denver owning 49.9% of the combined company on a fully diluted basis. The transaction is expected to be tax-

free to Ingersoll Rand and Gardner Denver's respective shareholders for U.S. federal income tax purposes. At the time of transaction close, ClimateCo will receive a cash payment of $1.9 billion. IndustrialCo has obtained fully underwritten commitments to provide it or a member of the IndustrialCo group with the debt facilities to fund its $1.9 billion payment to ClimateCo.

The transaction is expected to close by early 2020, subject to approval by Gardner Denver stockholders, regulatory approvals and customary closing conditions. . . .

Advisors

Goldman Sachs and Lazard are serving as financial advisors to Ingersoll Rand, and Paul Weiss, Rifkind, Wharton & Garrison LLP is serving as legal counsel. Citi and Baird are serving as financial advisors to Gardner Denver, and Simpson Thacher & Bartlett LLP is serving as legal counsel.

### *The Prospectus Omits Material Information*

36.     Defendants filed the Prospectus with the SEC in connection with the Proposed Transaction, which recommends stockholder approval of the Proposed Transaction at a special meeting scheduled for February 21, 2020.

37.     As set forth below, the Prospectus omits material information with respect to the Proposed Transaction, which renders the Prospectus false and misleading.

38.     First, the Prospectus omits material information regarding the Company's and Ingersoll-Rand's financial projections.

39.     With respect to the Company's financial projections, the Prospectus fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA and (b) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

40.     With respect to Ingersoll-Rand's financial projections, the Prospectus fails to disclose: (i) all line items used to calculate Adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

41. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

42. Second, the Prospectus omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Robert W. Baird & Co. Incorporated ("Baird").

43. With respect to Baird's The Ingersoll Rand Industrial Business Selected Publicly Traded Company Analysis, the Prospectus fails to disclose the individual multiples and metrics for the companies observed by Baird in the analysis.

44. With respect to Baird's Ingersoll Rand Industrial Business Discounted Cash Flow Analysis, the Prospectus fails to disclose: (i) the Ingersoll Rand Industrial Business's projected unlevered free cash flows and all underlying line items; (ii) the individual inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%; (iii) Baird's basis for assuming terminal values ranging from 10.0x to 12.0x year 2023 EBITDA; and (iv) the expected synergies used by Baird in the analysis.

45. With respect to Baird's Gardner Denver Discounted Cash Flow Analysis, the Prospectus fails to disclose: (i) all line items used to calculate Gardner Denver's projected unlevered free cash flows; (ii) the individual inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%; and (iii) Baird's basis for assuming terminal values ranging from 10.0x to 12.0x year 2023 EBITDA.

46. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed.

47. Third, the Recommendation Statement omits material information regarding potential conflicts of interest of Baird and the Company's additional financial advisor, Citigroup Global Markets Inc. ("Citi").

48. The Prospectus fails to disclose the amount of compensation Baird received for the past services it provided to the Company.

49. The Prospectus fails to disclose the amount of compensation Citi received or will receive in connection with its engagement, and the amount of compensation that is contingent upon the consummation of the Proposed Transaction.

50. The Prospectus fails to disclose whether Citi has provided past services to any parties to the Merger Agreement or their affiliates (in addition to serving as a lead underwriter in Gardner Denver's initial public offering and recent secondary offerings and as a lender in financing transactions for Gardner Denver), as well as the timing and nature of such services and the amount of compensation received by Citi for providing all such services.

51. The Prospectus fails to disclose material information regarding Citi participating in the financing for the Proposed Transaction (the "Financing"), including: (i) when Citi was offered the opportunity to participate in the Financing; (ii) the nature of Gardner Denver's officers' and directors' discussions with respect to Citi participating in the Financing; and (iii) the reasons Gardner Denver's officers and directors determined to allow Citi to continue to serve as the Company's financial advisor in light of Citi participating in the Financing.

52. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

53. Fourth, the Prospectus fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

54. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

55. The omission of the above-referenced material information renders the Prospectus false and misleading, including, *inter alia*, the following sections of the Prospectus: (i) Background of the Merger; (ii) Gardner Denver's Reasons for the Merger; Recommendation of Gardner Denver's Board of Directors; (iii) Certain Financial Forecasts; and (iv) Opinion of Baird.

56. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Gardner Denver's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Gardner Denver**

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Gardner Denver is liable as the issuer of these statements.

59. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within Gardner Denver, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

60. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

61. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

62. The Prospectus is an essential link in causing plaintiff and Gardner Denver's stockholders to approve the Proposed Transaction.

63. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

64. Because of the false and misleading statements in the Prospectus, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants, Ingersoll-Rand, HoldCo, and Merger Sub

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants, Ingersoll-Rand, HoldCo, and Merger Sub acted as controlling persons of Gardner Denver within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of Gardner Denver and participation in and/or awareness of Gardner Denver's operations and/or intimate knowledge

11

of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Gardner Denver, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

67. Each of the Individual Defendants, Ingersoll-Rand, HoldCo, and Merger Sub was provided with or had unlimited access to copies of the Prospectus alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Gardner Denver, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

69. Ingersoll-Rand, HoldCo, and Merger Sub also had supervisory control over the composition of the Prospectus and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Prospectus.

70. By virtue of the foregoing, the Individual Defendants and Ingersoll-Rand violated Section 20(a) of the 1934 Act.

71. As set forth above, the Individual Defendants, Ingersoll-Rand, HoldCo, and Merger Sub had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to

Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.Directing the Individual Defendants to disseminate a Prospectus that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 30, 2020   **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
　　Seth D. Rigrodsky (#3147)
　　Brian D. Long (#4347)
　　Gina M. Serra (#5387)
**OF COUNSEL:**　　300 Delaware Avenue, Suite 1220
　　Wilmington, DE 19801
**RM LAW, P.C.**　　Telephone: (302) 295-5310
Richard A. Maniskas　　Facsimile: (302) 654-7530
1055 Westlakes Drive, Suite 300　　Email: sdr@rl-legal.com
Berwyn, PA 19312　　Email: bdl@rl-legal.com
Telephone: (484) 324-6800　　Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com　　*Attorneys for Plaintiff*